# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

Gordon Warren Epperly
c/o P.O. Box 34358
Juneau, Alaska  [99803]

Telephone:  (907) 789-5659

**RECEIVED**

APR - 3 2006

CLERK, U.S. DISTRICT COURT
JUNEAU, ALASKA

1:06-cv-00008-JWS

**J 06 - 0 0 0 8 CV (JWS)**

|  |  |
|---|---|
| Gordon Warren Epperly, | ) |
| Plaintiff, | ) |
|  | ) |
| vs., | ) |
|  | ) |
| Congress of the United States, | ) |
| (United States) | ) |
| Defendant. | ) |
|  | ) |

Case No. J06-_____ CV

Complaint

---

In The Matter Of The <u>Reconstruction Acts</u> of 1867
[<u>THIRTY-NINTH CONGRESS. Sess. II, Ch. 153</u>]; /[1]
[<u>FORTIETH CONGRESS. Sess. I. Ch. 30</u>]. /[2]

To All and Sundry Whom These Presents Do or May Concern:

**Chapter One:**

**JURISDICTION**

The United States District Court has original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States (<u>28 USC 1331</u>).

---

[1]/ Attached as Exhibit One
[2]/ Attached as Exhibit Two

Judicial Review of federal enactments of law such as the <u>Reconstruction Acts</u> of 1867 are proper questions of law for the court - <u>*Marbury v. Madison*</u> 5 U.S. 137 (1803).

### Unconstitutional Act – Defined

"An unconstitutional act is not a law. **It confers no rights. It imposes no duties. It affords no protection. It creates no office.** It is in legal contemplation as inoperative as though it had never been passed. Therefore an unconstitutional act purporting to create an office gives no validity to the acts of a person acting under color of its authority."

<u>Norton v. Shelby County</u>, 6 S.Ct. 1121.

"An "*unconstitutional act*" constitutes a protection to no one who has acted under it, and no one can be punished for having refused obedience to it before the decision was made. A legislative act in conflict with the Constitution is not only illegal or voidable, but absolutely void. It is as if never enacted, and no subsequent change of the Constitution removing the restriction could validate it or breathe into it the breath of life."

<u>*In re Rahrer*</u>, 43 F. 556, 558, 10 L.R.A.444.

### Chapter Two:

### NEXUS

"[T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an 'injury in fact'— an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent, not "conjectural" or "hypothetical."' Second, there must be a causal connection between the injury and the conduct complained of--the injury has to be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"

<u>*Bennett v. Spear*</u>, 520 US 154, 162, 137 L Ed 2d 281 (1997)

The Defendant, The Congress of the United States, has used its legislative powers to alter the supreme law of the land, the United States Constitution, by a method not authorized by Article V of the Constitution for the United States. In using its legislative powers to enact the Reconstruction Acts of 1867 for the purpose of allowing unlawful governments of the southern (Rebel) states to cast ratification votes on the proposed 14th and 15th Amendments to the Constitution for the United States of America and mandating that non-Citizens of the United States may occupy legislative seats of those states for the purpose of casting ratification votes damages every citizen of every state and every natural born individual of the United States of America. The Plaintiff, Gordon Warren Epperly, is a citizen of the state of which he inhabits (Alaska) and is a Citizen of the United States by right of his natural birth in the state of California.

As the Defendant, the Congress of the United States, enjoys its newly founded powers of the 14th and 15th Amendments of the Constitution for the United States to which the Reconstruction Acts of 1867 brought into existence, and as the members of Congress have refused to review and give answers raised by several Legislatures of the states or any citizens thereof regarding the enactments of the Reconstruction Acts of 1867, the Congress continues to bring damage to the Plaintiff, the states, and the citizens thereof.

The specific damages brought upon the Plaintiff in and through the Reconstruction Acts of 1867 is the Plaintiff has been placed in a state of involuntary servitude as he has been made liable for the debt of the United States, a debt which he is barred by the 14th Amendment to question. Through the Reconstruction Acts of 1867, the Plaintiff's inalienable and political rights that were protected under the Ninth Amendment to the United States Constitution have been suspended and the Plaintiff, being a (purported) vessel /3 of the United States, is allowed to exercise only "*privileges*" and "*immunities*" as may be granted or denied to him by the Congress of the

---

3/ 18 USC 9 - "Vessels of the United States Defined. The term vessel of the United States as used in this title means a vessel belonging in whole or in part to the United States or any citizen thereof or any corporation created by or under the laws of the United States or any State or Territory or district or possession." [Emphasis Added]

United States. /[4]    And as members of Congress have refused to give an answer to Plaintiff's letters of inquiry /[5] into the intent and purpose of the Reconstruction Acts of 1867, the Plaintiff's constitutional right to petition the government for redress of grievance has been denied.  With the silence of Congress of the United States in giving answer to Plaintiff's letters of inquiry, the Plaintiff's administrative remedies have been exhausted.

On April 15, 1994; Mr. Consuelo Pachon for the U.S. Secretary of State, declared that the Plaintiff, Gordon Warren Epperly, was a citizen of the United States /[6] and as such, he is subject to the jurisdiction of the United States under the 14th Amendment to the United States Constitution. /[7]  Mr. Consuelo Pachon further declared that the provisions of the Amendment cannot be waived by unilateral declaration except as authorized by law.  As the U.S. Secretary of State does not recognize the rights of a United States National (*One who is a citizen of a state but not a citizen of the United States* /[8]) to expatriate /[9] from under the provisions of the 14th Amendment, a nexus to the 14th Amendment and the Reconstruction Acts of 1867 has been established.

---

[4] "Privileges" and "Immunities" - see U.S. Const., 14th Amendment, Section One
[5] Attached as Exhibits Three and Four
[6] The term "*citizen of the United States*" as used with a lower case "*c*" in the word "*citizen*" denotes the reference to the word "*person*" of the U.S. Const., 14th Amendment.  It is a term that is used to identify a government created body politic known as "*negroes*" or a "*corporation*" and it usually has no reference to one who is a natural born white caucasian male citizen of a state of the Union – Slaughterhouse Cases, 83 U.S. 36 (1872); Santa Clara County v. Southern Pacific R.R., 118 U.S. 394 (1886).
[7] Attached as Exhibit Five
[8] Ex parte Knowles, 5 Cal. 300, 302 (1855)
[9] FORTIETH CONGRESS. Sess. II. Ch. 249  (Rights to Expatriate).

**Chapter Three:**

**Mark My Words:**

Several *"Reconstruction Acts"* have been passed by Congress after the Civil War was proclaimed by the President of the United States to be at an end (*Presidential Proclamation No. 153* of April 2, 1866 and <u>14 Stat. 814</u>). The *"Reconstruction Acts"* that will be addressed are those that were passed on March 2, 1867 (*THIRTY-NINTH CONGRESS. Sess. II, Ch. 153*) and on July 19, 1867 (*FORTIETH CONGRESS. Sess. I. Ch. 30*). The <u>Reconstruction Acts</u> of 1867 contains the following marks of fraud:

**<u>First</u>**

The following paragraph appears at the *"Preamble"* of the *"Reconstruction Acts"* of *"March 2, 1867"*:

"Whereas *no legal state government* or adequate protection for life or property *exists in the rebel states of Virginia, North Carolina, South Carolina, Georgia, Mississippi, Alabama, Louisiana, Florida, Texas, and Arkansas;* ..." [Emphasis added]

**Mark:**

The <u>Reconstruction Act</u> of March 2, 1867 is unconstitutional for being vague for want of a date (month/day/year) declaring when the southern states ceased to have lawful governments.

**Synopsis:**

As the Congress declared within the <u>Reconstruction Act</u> of March 2, 1867 that the southern states had no lawful governments and those governments shall not be restored until those states have been admitted into Congress by law we must ask:

By what authority did the Congress of 1867 rely upon to declare that the southern states had no valid governments and that

5

the civil governments that were in place were operating as *"provisional Governments"* subject to the direct authority of Congress when those states were previously brought into the Union of the United States of America on *"equal footing"* with the other states?

This is a most interesting constitutional question especially when Congress adopted the following July 24, 1861 Resolution:

> "RESOLVED, That the present deplorable civil war has been forced upon the country by the disunionists of the southern states now in revolt against the constitutional government and in arms around the capital; that in this national emergency Congress, banishing all feeling of mere passion or resentment, will recollect only its duty to the whole country; that this war is not prosecuted upon our part in any spirit of oppression, nor for any purpose of conquest or subjugation, nor purpose of **OVERTHROWING** or **INTERFERING** with the **RIGHTS** or **ESTABLISHED INSTITUTIONS** of those **STATES**, but to defend and maintain the supremacy of the Constitution and all laws made in pursuance thereof, and to preserve the Union, with all the dignity, equality, and rights of the *several* states unimpaired; that as soon as these objects are accomplished the war ought to cease." [Emphasis added]

> *37th Congress,* 1st Session. - *Mis. Doc. No. 7*

And where the President of the United States had issued the following Proclamations:

> "Insurrection is declared at an end and that peace, order, tranquility and civil authority now exist in and throughout the whole of the United States"

> *Proclamation of the President* dated August 20, 1866

> "The war then existing was not waged on the part of the Government in any spirit of oppression, nor for any purpose of conquest or subjugation, nor purpose of overthrowing or interfering with the rights or established institutions of the states, but to defend and maintain the supremacy of the Constitution and to preserve the Union with all the dignity, equality, and rights of

the several states unimpaired, and that as soon as these as those objects should be accomplished this war ought to cease."

*Proclamation of the President* dated September 7, 1867

And when the U.S. Supreme Court declared:

"When, therefore, Texas became one of the United States, she entered into an indissoluble relation. All the obligations of perpetual union, and all the guarantees of republican government in the Union, attached at once to the state. **The act which consummated her admission into the Union was something more than a compact, it was the incorporation of a new member into the political body. And it was final.** The union between Texas and the other states was a complete, as perpetual, **and as indissoluble as the union between the original states.** There was no place for reconsideration, or revocation, except through revolution, or through consent of the states.

"Considered therefore as transactions under the Constitution, the ordinance of secession, adopted by the convention and ratified by a majority of the citizens of Texas, and all the acts of her legislature intended to give effect to that ordinance, were absolutely null. They were utterly without operation in law. The obligations of the state, as a member of the Union, and of every citizen of the state, as a citizen of the United states, remained perfect and unimpaired. **It certainly follows that the state did not cease to be a state, nor her citizens to be citizens of the Union.** If this were otherwise, the state must have become foreign, and her citizens foreigners. **The war must have ceased to be a war for the suppression of rebellion, and must have become a war for conquest of subjugation.**

"Our conclusion therefore is, that Texas continued to be a state, and a state of the Union, notwithstanding the transactions to which we have referred. And this conclusion, in our judgment, is not in conflict with any act or declaration of any department of the National government, but entirely in accordance with the whole series of such acts and declarations since the first out break of the rebellion." [Emphasis Added]

*State of Texas* v. *White*, 7 Wall. 700, 19 L.Ed. 227

And we also know that the Congress of 1867 acknowledged that the southern states had lawful governments when the Congress submitted

the resolution and accepted their ratification votes on the present day U.S. Const., 13th Amendment.

Even though no date may be found within the <u>Reconstruction Acts</u> of 1867 stating when the southern states ceased to have lawful governments, we can conclude that the southern states had no lawful governments from the date of the enactment of the first <u>Reconstruction Act</u> (*"Act" of March 2, 1867*) until the southern states were admitted into Congress by enactment of law.

### Second

The following paragraph appears in <u>Section 5</u> of the <u>Reconstruction Act</u> of March 2, 1867:

> "That when the people of anyone of said rebel states shall have formed a constitution of government in conformity with the Constitution of the United States in all respects, ***FRAMED BY A CONVENTION OF DELEGATES*** elected by the male citizens of said state twenty one years old and upward, ***OF WHATEVER RACE, COLOR,*** or previous condition, ..." [Emphasis added]

**Mark:**

The <u>Reconstruction Act</u> of March 2nd, 1867 is unconstitutional because the <u>14th</u> and <u>15th Amendments</u> to the <u>U.S. Constitution</u> **DID NOT EXIST** at the time the *"Reconstruction Act"* of March 2, 1867 was enacted into law. Looking to the case of <u>Dredd Scott vs. Sanford,</u> 60 US 393, 407 (1857), the Congress had no authority to issue a mandate that authorized any individual other than *"White Caucasian Male Citizens"* to vote at an election, or be a *"Candidate*," or be a *"Delegate"* to a *state Constitutional Convention* or to a *state Legislature.*

8

**Synopsis:**

Even if the 14th Amendment was in effect at the time the Reconstruction Acts went into effect; the 14th Amendment granted no authority to Congress to grant any individual "*of whatever race, color, or previous condition*" other than a white caucasian male citizen of a state the "*Right of Suffrage.*" The indication of this fact appears in President Andrew Johnson's "*Veto*" message regarding the passage of the first "*Civil Rights Bill*" known as 14 Stat. 27, Ch. 31. This "*Veto*" message appears in "*THE CONGRESSIONAL GLOBE*" of March 27, 1866 at S.p. 1679-81:

> "... If it be granted that Congress can repeal all state laws discriminating between whites and blacks in the subjects covered by this bill, why, it may be asked, may not Congress repeal, in the same way, all state laws discriminating between the two races on the subjects of suffrage and office? If Congress can declare by law who shall hold lands, who shall testify, who shall have capacity to make a contract in a State, then Congress can by law also declare who, without regard to color or race, shall have the right to sit as a juror or as a judge, to hold any office, and, finally, to vote, 'in every State and Territory of the United States.'"

This part of the "*Veto*" message caused considerable debate among the members of Congress. This debate didn't cease with the "*Civil Rights Bill,*" but was carried on during the debate on the 39th Congress' *Senate Resolution No. 30* and the 39th Congress' *House Resolutions No's. 48, 63,* and *127* proposing the 14th Amendment to the U.S. Constitution.

The Congress felt, that neither the Civil Rights Act of 1866 nor any of the "*Resolutions*" proposing the 14th Amendment granted any "*Negro*" the "*Rights of Suffrage*" within the boundaries of any state. This fact is evident not only by the debates of Representative Ashley (*Congressional Globe*, December 10, 1867, H.p. 117-118) and Senator Cragin (*Congressional Globe,* January 27, 1868, S.p. 850-851) on

9

the 14th and 15th Amendments; but when it was first raised in the debates on the Civil Rights Acts of the THIRTY-NINTH CONGRESS, Sess. I. Ch. 31 of April 9, 1866 (42 USC 1981-1986):

> "Mr. WILSON, of Iowa. I move to add the following as a new section:
>
> "AND IT BE FURTHER ENACTED, That nothing in this act shall be so construed as to affect the laws of any state concerning the right of suffrage.
>
> "Mr. Speaker, I wish to say one word. That section will not change my construction of the bill. ***I do not believe the term civil rights includes the right of suffrage.*** Some gentlemen seem to have some fear on that point.
>
> "***The amendment was agreed to.***" [Emphasis added]

> U.S. House debate on *Senate Bill No. 61*
> 39th Congress, 1st Session - March 2, 1866

Before this Civil Rights Act of Congress was passed into law, the Congress had decided that this *"Act"* would be challenged in the U.S. Supreme Court and that the Court would have struck it down as being unconstitutional. To head off the problem, the Congress began drafting the "*Resolutions*" proposing the 14th Amendment:

> [Mr. ROGERS] "Why, sir, the proposed amendment of the Constitution [*14th Amendment*] which has just been discussed in this House and postponed till April next, was offered by the learned gentleman from Ohio [Mr. Bingham] for the very purpose of avoiding the difficulty which we are now meeting in the attempt to pass this bill ["*Civil Rights Act*" of 1866] now under consideration. Because the amendment which he reported from the committee of fifteen was intended to confer upon Congress the power "*to make laws which shall be necessary and proper to secure to the citizens of each state all the privileges and immunities of citizens in the several states, and to all persons in the several states equal protection in the right of life, liberty, and property.*" **There is no protection or law provided for in that constitutional amendment which Congress is authorized to**

10

pass by virtue of that constitutional amendment that is not contained in this proposed act of Congress which is now before us. Therefore we have the opinion of the majority of the committee of fifteen, and the opinion of the learned gentleman from Ohio, [Mr. Bingham,] THAT IN ORDER TO DO WHAT THIS BILL PROPOSES, CONGRESS MUST BE EMPOWERED BY AN AMENDMENT TO THE ORGANIC LAW.

"I affirm, without the fear of successful contradiction, that by the decision of the highest court of the United States, that august tribunal to whose decisions every honest and patriotic man is bound to bow, it has been expressly and solemnly decided, after the most mature deliberation, by a bench of the most enlightened and learned lawyers that ever sat upon it, that negroes in this country, whether free or slave, are not citizens or people of the United States within the meaning of the words of the constitution, and that therefore no law of Congress or of any state can extend to the negro race, in the full sense of the term, the STATUS of citizenship. And the organic law, by its letter and spirit, and in view of the contemporaneous circumstances under which it was passed, fully vindicate the authority of this decision of the Supreme Court, declaring that no power within any state, much less in the Congress of the United States, can change the STATUS of the negro. That cannot be done until the requisite amendment is made to the Constitution, until some such article has been carried into effect by two thirds of both Houses of Congress and three fourths of the states.

"Now, sir, no bill has been offered in this House or in the other, the freedman's bill not exclude, which proposes to give to Congress such dangerous powers over the liberties of the people as this bill under consideration, and if it can be constitutionally passed by the Congress of the United States, and is no infringement upon the reserved or undelegated powers of the states, then Congress has the right, not only to extend all the rights and privileges to colored men that are enjoyed by white men, but has the right to take away. If Congress has the right to extend the great privileges of citizenship, which heretofore have been controlled by the states, to any class of beings, they have the right, by the same authority to take away from any class of people in any state the same rights that they have the right to extend to another class of persons in the same state. In other words, if the Congress has power under our present organic law to decide what rights and privileges shall be extended to negroes, it has the same power and authority under that

organic law to extend its legislation so as to take away the most inestimable and valuable rights of the white men and the white women of this country, and not only take away but destroy every blessing of life, liberty, and property, upon the principle that Congress has unlimited sovereign power over the RIGHTS OF THE STATES; and whenever, in its judgment, it may see fit, **it may carry this power on to an unlimited extent.**

"Now sir, is there any member on the either side of the House who, on the honor of a man of conscience and integrity, can make himself believe that this Congress has the right to control the privileges and immunities of every citizen of these states, as contemplated in the bill, without a change in the organic law of the land?" [Emphasis added]

U.S. House debate on *Senate Bill No.61*
39th Congress, 1st Session - March 1, 1866

As we can see from the above speech of U.S. Representative Rogers; the 14th Amendment does no more than what was proposed in the Civil Rights Act of 1866 and therefore the 14th Amendment cannot, and it does not, run to the subject of "*Suffrage.*"

Shortly before the 14th Amendment to the U.S. Constitution was purported to have been ratified by three-fourths of the states on July 9, 1868; the Congress submitted *House Resolution No. 364* of the *40th Congress, 3rd Session* (January 11, 1869) proposing the 15th Amendment to the U.S. Constitution. This Amendment purports to grant the Colored People the *"Rights of Suffrage"* within any state and within the United States. It would be most interesting as to what Constitutional authority the Congress of 1867-68 rely upon to grant the Colored People of the southern states the Right to "*Vote*" at any election pertaining to the ratification of the 14th and 15th Amendments to the U.S. Constitution? Perhaps this Court or the present Congress could enlighten the People of this Nation as to where this authority came from; especially when the Congress of 1869 admitted to the World that the

12

U.S. Constitution needed to be amended before the Negroes could have Civil Rights and/or Rights of Suffrage as evidenced by the existence of the 14th and 15th Amendment to the U.S. Constitution.

The several "*state Constitutional Conventions*" that were organized under the Reconstruction Act of March 2, 1867 did not conform to the provisions of the United States Constitution. As evidenced by the first paragraph of FORTIETH CONGRESS. Sess. II. Ch. 70; the vote taken to revise "*state Constitutions*" within the several southern states were adopted by a large majority. What the "*Statute*" did not reveal is that the majority votes of those states were of the "*COLORED RACE*" of the population. This fact is confirmed within the May 13, 1868 *Senate Executive Document No. 53* of the 40th *Congress, 2d Session* that was issued in compliance with the *"Resolution"* of the Senate of December 5, 1867 by the General of the Army, Ulysses S. Grant. This *"Document"* consist of 12 pages and it may be found in the "*CIS Serial Index*" of 1867 as "*S. Ex. Doc. 53 (40-2) 1317*." These "*Electors*" and the "*Members*" elected to the several "*state Constitutional Conventions,*" were made up of the "*COLORED RACE.*" They did not have the "*lawful status*" of a citizen of a state or of a "*citizen*" of the United States nor did they have any Political Rights of "*Suffrage*" under any law of any state or of the United states for want of an Amendment to the United States Constitution. Any "*Acts of Law*" coming from those state Conventions or any Legislatures that were convened under the Reconstruction Acts of 1867 are unconstitutional and must be declared so by proper authority.

## **Third**

"That said Rebel states shall be divided into military districts and made subject to the military authority of the United States as hereinafter prescribed and for that purpose ...."

*Reconstruction Act, Section 1* of July 19, 1867 (FORTIETH CONGRESS. Sess. I. Ch. 30)

**Mark:**

The Reconstruction Act of July 19th 1867 is unconstitutional for it revokes the statehood status of the southern (Rebel) states after those states were admitted into the Union on equal footing with other states of the United States of America. Military Districts are not states or Territories of the United States of America.

**Synopsis:**

A *"military district"* of the United States is neither a state or a Territory, but is made subject, by the Constitution, to the exclusive jurisdiction of Congress. It is a form of government that is not compatible with the status of being a state or a territory of the United States of America. The forms of government are different, in that a military district is a totalitarianism (*dictatorship*) while the other two are republican in form. The two forms of government cannot exist together at the same time.

Alaska (*a state which the Plaintiff inhabits*) was designated as a *"military district"* at the time it was purchased from Russia. /[10] It had no recognizable form of government by which the people could be represented. The people of Alaska were governed by a form of *"military jurisdiction"* as imposed by Military Commanders of the United States.

---

[10]/   March 30, 1867 15 Stat. 198

14

The people of Alaska did not have a limited republican form of government until Congress designated Alaska as a *"Territory"* on August 24, 1912. /[11]  Under the status of a *"Territory,"* the people were allowed to elect Delegates to sit in a Territorial Legislature and were allowed to elect a Territorial Governor.   Any laws enacted by the Territorial Legislature of Alaska were required to be approved by the Congress of the United States. /[12]    The people did not have representation in the Congress of the United States by Congressmen or Senators.

The people of Alaska did not have full rights of *"statehood"* until Alaska was admitted into the Union on equal footing with the other states of the United States of America. /[13]  **The recognized status of *"Statehood"* is the representation of the people by *"Delegates"* in the Congress of the United States.**

### Fourth

"That the commander of any district named in said act (THIRTY-NINTH CONGRESS. Sess. II, Ch. 153) *shall have power, ... to suspend or remove from office, or from the performance of official duties and the exercise of official powers,* any officer or person holding or exercising, or professing to hold or exercise, any civil ... office or duty in such district *under any power, election, appointment or authority* derived from, or granted by, or claimed under, any so-called state or the government thereof, or any municipal or other division thereof, and upon such suspension or removal such commander ... *shall have power to provide from time to time for the performance of the said duties of such officer or person so suspended or removed, BY THE DETAIL OF SOME COMPETENT OFFICER OR SOLDIER OF*

---

[11]/  SIXTY-SECOND CONGRESS. Sess.II. Ch. 387 (Section 1)
[12]/  SIXTY-SECOND CONGRESS. Sess.II. Ch. 387 (Section 20); 24 Stat. 17; 37 Stat. 517; 37 Stat. 518.
See also Section 6 of the FORTY-NINTH CONGRESS. Sess. I. Ch. 818
[13]/  Admitted into the Union on July 7, 1958 - Public Law 85-508

> *THE ARMY, OR BY THE APPOINTMENT OF SOME*
> *OTHER PERSON, to perform the same, and to*
> *fill vacancies occasioned by death, resignation,*
> *OR OTHERWISE.*  [Emphasis added]

> *Reconstruction Act, Section 2* of July 19, 1867
> (FORTIETH CONGRESS. Sess. I. Ch. 30)

**Mark:**

The <u>Reconstruction Act</u> of July 19th 1867 is unconstitutional for it substitutes a military government for a republican form of government for the southern states of the Union in violation of <u>U.S. Const., Article IV, Section 4</u>.

**Synopsis:**

The several *"Constitutions"* of the states /[14] that were adopted under the *"Reconstruction Acts"* of 1867 provided that the members of the Legislatures of those southern states may/shall consist of *"colored people of whatever race"* and if the people of those states refused to elect and seat those *"colored people of whatever race"* into the Legislatures of their states; the Military Commanders of those Military Districts *appointed* the members of those Legislatures under the (purported) authority of <u>Section 2</u> of the <u>Reconstruction Act</u> of July 19, 1867.

Whereas the <u>14th</u> and <u>15th Amendments</u> to the <u>U.S. Constitution</u> **WERE NOT IN EXISTENCE** at the time the newly elected/appointed legislators were seated within their respective states and whereas those legislators consisted of *"Colored People of Whatever Race;"* the Legislatures of the southern states (*military districts*) consisted

---

[14]/ In this Synopsis, the term *"state"* means *"military district."*  Congress suspended the statehood status of the southern states and declared them to be military districts – *Reconstruction Act, Section 1* of July 19, 1867

of Members who had no *"lawful status"* of being *"citizens"* of any state or of the United States. Any *"Acts"* (including the *"Resolutions"* ratifying the 14th Amendment) that were passed by the *"newly"* created state Legislatures are unconstitutional. Said *"Resolutions of Ratification"* are without lawful force or effect for they were adopted outside the authority of the Constitution for the United States.

Several *"Governors"* of the southern states were removed from Civil Office by *"Military Commanders"* under the above cited Section 2 of the Reconstruction Act of July 19, 1867 and were replaced with *"Army Officials"* or other military appointees. These Military Commanders (or appointees) declared that they had the authority to reject or approve *"Resolutions"* of the Legislature and they declared that they had the authority to submit *"Resolutions of Ratification"* to the U.S. Secretary of state declaring that the Legislature had ratified the 14th and 15th Amendments to the United States Constitution. As these Military Commanders and/or their appointees had no authority under the Constitution of the United States to occupy any Civil Office of a state; the *"Secretary of state"* of the *"United States"* did not have, nor did he ever have, any lawful *"Executive Transmittal"* of *"Ratification"* of the 14th or 15th Amendments within his possession from any southern state at the time the Reconstruction Acts of 1867 were in effect.

## Chapter Four:

## Creation of Remedy

Pursuant to 28 USC 2201; the Plaintiff, Gordon Warren Epperly, hereby moves the Court to declare the rights and legal relations of Plaintiff's U.S. Constitution, Ninth Amendment protected inalienable and political rights that were suspended upon the enactment of the Reconstruction Acts of 1867 as follows:

### First

Declare the date (month/day/year) that the southern (Rebel) states ceased to have lawful governments.

### Second

Declare the authority relied upon by the Congress of 1867 to allow Negroes to exercise political rights of holding public office of a state Legislature.

### Third

Declare the authority relied upon by the Congress of 1867 to allow Negroes to exercise the political rights of suffrage.

### Fourth

If the southern (Rebel) states were "*states*" under the Reconstruction Acts of 1867; declare the authority relied upon by the Congress of 1867 to allow Military Commanders and/or their staff to hold and exercise the office of Governor, Legislature, or any other Civil Office of a state.

### Fifth

If the southern (Rebel) states were "*states*" under the Reconstruction Acts of 1867; declare the authority relied upon by the Congress of 1867 to mandate that a state must ratify proposed Amendment[s] to the Constitution of the United states before that state may be represented in Congress of the United States.

### Sixth

If the southern (Rebel) states were "*states*" under the Reconstruction Acts of 1867 and those states had unlawful governments as declared by Congress; declare the authority relied upon by the Congress of 1867 to mandate that

unlawful governments of a state have the authority to cast ratification votes on proposed Amendments to the Constitution for the United States of America.

### Seventh

If the statehood status of the southern (Rebel) states was suspended and replaced with military districts of the United States; declare the authority relied upon by the Congress of 1867 to allow United States military districts to cast ratification votes on Amendments to the Constitution for the United States of America.

### Eighth

If no authority may be found for any one of the above seven declarations; the Plaintiff moves the Court to declare that the Congress of 1867 exceeded its authority and the Reconstruction Acts of 1867 are null and void from the date of their enactments for being repugnant to the Constitution for the United States of America.

### Ninth

If no authority may be found for any one of the above seven declarations; the Plaintiff moves the Court to notify the Archivist of the United States of its findings and instruct the Archivist to remove from the record the "*Notices of Ratification*" that were received from the southern states by the U.S. Secretary of State during the period of time of the enactment of the Reconstruction Acts of 1867.

### Tenth

If this Court issues forth a judgment declaring that the Congress of 1867 exceeded its authority and the Reconstruction Acts of 1867 are null and void for being repugnant to the Constitution for the United States; the Plaintiff hereby moves the Court to declare that the Congress of 1867 invalidated any Resolutions to amend the Constitution for the United States when that Congress enacted the

Reconstruction Acts of 1867 for the amendment procedures stated within Reconstruction Acts are not authorized by Article V of the Constitution for the United States of America.

Dated this _3rd_ day of _April_ , in the year of our Lord Jesus Christ, Two-Thousand and Six.

_Gordon Warren Epperly_
Gordon Warren Epperly - Plaintiff